IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

| | |
|---|---|
| PATRICK COLLINS, INC., | ) Case No.: 1:12-cv-00844-TWP-MJD |
| Plaintiff, | ) |
| v. | ) |
| MATTHEW OLDLAND, DERRICK LUND, RADLEY HADDAD, and JOHN DOES 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, | ) |
| Defendants. | ) |

### DECLARATION OF DERRICK LUND

Comes now Derrick Lund, and, having been duly sworn upon his oath, says:

1. I am over eighteen years of age and competent to testify about the subjects set forth in this Declaration. I have personal knowledge of the matters set forth in this Declaration, and I affirm under penalty of perjury that the following statements are true.

2. I have reviewed the Affidavit of Service filed as Document 60 in the above referenced case ("the Affidavit of Service") and it is false. I have not resided at 356 Boylston Street, Suite 5308, Carmel, IN 46032 ("my old apartment") since May of 2012 and was not present at that address on November 8, 2012.

3. Attached hereto as Exhibit A is a redacted copy of the first page of my lease for my current apartment that I signed on May 2, 2012 for the rental period of May 25, 2012 to May 24, 2013. My current apartment is about a mile from my old apartment. Attached hereto as Exhibit B is a redacted copy of the receipt from the movers that assisted with my move on May 25, 2012 from my old apartment to my current apartment.

EXHIBIT "A"

4. I had not received any summons, complaint, or other papers concerning the above referenced lawsuit until March 27, 2013, when an envelope containing an "Entry of Default" was forwarded to my current address by the post office. A redacted copy of that envelope is attached hereto as Exhibit C.

5. Upon receiving the "Entry of Default" I immediately contacted an attorney to find out what this was all about. I then went to my old apartment and met the man who is currently living there. He is a non-white male of Pakistani descent. He is considerably shorter than me, and I estimate that he is about 5 feet tall and weighs about 150 pounds. Accordingly, he clearly does not match the description of the man who was supposedly served at that address as stated in the Affidavit of Service.

6. I also do not match the description of the man supposedly served in the Affidavit of Service because, on November 8, 2012, my weight was about 230 pounds. However, I am a 35 year old Caucasian male with brown hair and glasses, and on my driver's license, which was issued in March 2009, my weight is listed as 190 pounds. Accordingly, it appears to me that information from my driver's license was somehow used to populate the description of the person served in the Affidavit of Service.

Further affiant saith not.

I AFFIRM UNDER PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Dated: 4/30/2013

Derrick Lund




**Indiana Apartment Association** — **Indiana Apartment Lease Contract** — NATIONAL APARTMENT ASSOCIATION

Date of Lease Contract: **May 2, 2012**
(when the Lease Contract is filled out)

This is a binding document. Read carefully before signing.

---

### Moving In -- General Information

1. **PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) (list all people signing the Lease Contract): **Derrick Lund**

   _____ and us, the owner: ████████████

   (name of apartment community or title holder). You've agreed to rent Apartment No. ____, at _____ (street address) in _____ (zip code), (city), Indiana, for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of the owner's successors' in interest or assigns). Written notice to or from our managing agent (referenced below) constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and (list all other occupants not signing the Lease Contract):

   _____

   No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than __7__ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

3. **LEASE TERM.** The initial term of the Lease Contract begins on the **25th** day of **May**, **2012**, and ends at midnight the **24th** day of **May**, **2013**. This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 37. If the number of days isn't filled in, at least 30 days notice is required.

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ **0.00**, due on or before the date this Lease Contract is signed. The security deposit shall not bear interest nor be held separately or in trust. Upon vacating the Apartment, you shall supply to us, in writing, your forwarding address. Payment of the security deposit to any resident hereunder shall serve to satisfy our obligation to return the security deposit, and notice to one resident of application of the security deposit shall serve as notice to all residents of the apartment. In the event you shall fully and faithfully perform and keep the terms, covenants and conditions of this Lease Contract and return the Apartment to us at the expiration or termination of this Lease Contract in as good and clean a condition as they are in as of the commencement of this Lease Contract, ordinary wear and tear excepted, then the security deposit, or the appropriate portion thereof, shall be refunded by us to you. In the event that you shall fail to keep and fully perform the terms, covenants and conditions of this Lease Contract, we shall retain from said security deposit an amount sufficient to reimburse us for any damages caused by your default, including but not limited to:

   (a) any unpaid "rent" due under this Lease [as the term "rent" is defined under state law] including, but not limited to, payments due under this Lease, such as unpaid monthly rent installments, late fees, returned check fees, attorney's fees, court costs and interest;

   (b) the cost to repair any damages to the Apartment, common areas and/or any of Landlord's property, real or personal, including but not limited to the cost of general cleaning, carpet cleaning and painting costs, reasonable wear and tear excepted. Reasonable wear and tear shall not include breaks, holes, scratches or burns in any surface, fixture or appliance, trash remaining after the Apartment is vacated, or carpet which is not freshly-cleaned; and

   (c) unpaid utilities and any other item allowed by law or equity.

   In the event the security deposit shall be insufficient to cover your default, we may enforce any additional rights which we may have, against you, in law or in equity, without any limitation by reason of the security deposit or our failure, inadvertent or otherwise, to strictly comply with the Indiana Security Deposit Statute. UNDER NO CIRCUMSTANCES MAY RESIDENT APPLY THE SECURITY DEPOSIT AS THE LAST MONTHLY INSTALLMENT DUE PURSUANT TO THIS LEASE. The security deposit and any deductions, damages or charges shall be itemized by us in a written notice to you, together with any amount due, within forty-five (45) days after expiration or termination of your tenancy or our acceptance of your surrender of possession, provided you have provided us, in writing, with your forwarding address.

5. **KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __2__ mailbox key(s), and __1__ other access devices for **Keyfob**. Your apartment will be (check one): ☐ furnished or ☒ unfurnished.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ **1009.00** per month for rent, payable in advance on or before the 1st day of each month (due date) without demand and with no grace period:

   ☒ at the on-site manager's office, or
   ☒ at our online payment site, or
   ☒ at **Amenities Center**

   Prorated rent of $ **227.84** is due for the remainder of the (check one): ☒ 1st month or ☐ 2nd month, on _____.

   Cash is unacceptable without our prior written permission. You must not withhold or offset rent. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the **5th** day of the month, you'll pay an initial late charge of $ **100.00** plus a late charge of $ **0.00** per day after that date until paid in full. You'll also pay a charge of $ **75.00** for each returned check or rejected electronic payment, plus the initial and daily late charges set forth above from the due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract for such delinquency will be authorized. We'll also have all other remedies for such violation.

7. **UTILITIES.** We'll pay for the following items, if checked:

   ☐ water  ☐ gas  ☐ electricity  ☐ master antenna
   ☐ wastewater  ☐ trash  ☐ cable TV  ☐ other_____

   You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected--including disconnection for not paying your bills--until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents or occupants or for our own negligence or intentional acts.

   We urge you to get your own insurance for losses to your personal property or personal injuries due to theft or other criminal activity, fire, water damage, pipe leaks and the like.

   Additionally, you are (check one) ☒ required to purchase personal liability insurance in the minimum amount of $ **100000.00**
   ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

9. **LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move in.

   You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one doorviewer on each exterior door; and (4) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

   What You Are Now Requesting. You now request, at the time of execution of this Lease Contract the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.

   ☒ keyed deadbolt lock    ☒ doorviewer
   ☐ sliding door bar       ☐ sliding door pinlock

   Payment for Rekeying, Repairs, Etc. You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was previously misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

05022012245701IN11012236

Derrick Lund
© 2011, National Apartment Association, Inc. - 1/2011

Page 1 of 6

☑ This document was executed via the NAA E-signature System - ID: 29859001

EXHIBIT A

# TWO MEN AND A TRUCK.
### "Movers Who Care."

0191# 020692

11787 Technology Drive
Fishers, IN 46038
(317) 489-5750
Fax (317) 333-6018
www.twomen.com
Each Franchise Independently
Owned and Operated.

## HOME MOVING SHEET

Move Date: Fri May 25, 2012
ETA: 8:00 AM
Truck: N Hogan
Confirm: CNV6-JNUS-NQF
Team: 2

Job #: No21681
Zone: Local
Activity: Moving
Type: Home
Booked: Wed May 09, 2012
Scheduler: Lyndi

**Customer/Phone(s):**
Lund, Derrick

**Move From:**
Apartment
Carmel NTS Center
355 Boylston Street
Apt 5308
Carmel, IN 46032
Sq. Ft.: 800
Floor: 3
Elevator

**Move To:**

Boxes: Billing: Work Order
Favorite: $6.50
Delivery: Take With Job

| Quantity | Item | Extras | Note |
|---|---|---|---|
| 2 | TV - Flat Panel | | 50" |
| 6 | Large Box-4.5 c | | |
| 4 | Medium Box-3.0 | | |
| 2 | Sofa - Love | | |
| 1 | Sofa - 3 Cush | | |
| 4 | Picture > 2 sq ft | | |
| 1 | Ottoman | | |
| 3 | End Table | | |
| 1 | Dining Table <4 | | |
| 1 | Coffee Table | | |

**Total Extras:**
(Items Listed as Space Allows)

Printed: May 24, 2012 at 18:22

Home/Business Walk-Through. I have inspected the location(s) from which items were loaded and verify that all requested items (boxes, furniture, etc.) have been placed on the truck.
Truck Release/Truck(s)#:_____ I have inspected the truck in which my items were transported and verify that all items have been removed from the truck.
Packing Release. I have inspected the item/rooms to be packed/prepped and verify they have been completed.

I have read the Moving Service Agreement on the reverse side of this form. I have received and read the Pre-Move Confirmation Letter. I agree to these terms and I agree to have TWO MEN AND A TRUCK move me to my location pursuant to these terms.

Customer's Signature

2 Hour Minimum
Service Charge
Rates @ $
Hours @ $
Extras @ $
Subtotal
Other
Boxes + tax
Subtotal
Deposit 5/9/12
Adjustment
TOTAL DUE
Tip
Total Received
Balance Due (see invoice)

Customer's Signature   Date
Customer's New Phone Number
Cash   Check #
Drivers Lic#   State
Visa  MasterCard
Card #
Expires   Auth #
Name on Card (Printed)  Derrick W. Lund

| Movers | Arrival | Down | Depart | Arrive |
|---|---|---|---|---|
| Sull | 8:45 | | 1:45 | |
| | | | | |

White copy/Office (numerical)   Green Copy/Office (chronological)   Yellow Copy/Customer

EXHIBIT B

*(Image of envelope rotated sideways)*

THE OFFICE OF THE
CLERK OF THE U.S. DISTRICT COURT
105 U.S. COURTHOUSE
46 EAST OHIO STREET
INDIANAPOLIS, INDIANA 46204

OFFICIAL BUSINESS

$000.46⁰
MAR 13 2013
MAILED FROM ZIP CODE 46204

Derrick Lund
356 Boylston Street, Suite 5308
Carmel, IN 46032

NOTICE SENDER OF NEW ADDRESS
LUND DERRICK M

EXHIBIT C